UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
ALLSTAR MARKETING GROUP LLC,

                      Plaintiff,                            20-cv-9069 (PKC)

      -against-                                OPINION AND ORDER

ANDNOV73, ATZIKL7933_1, BUYZOID,
FLOWCARRYM_2, GRACEFULVARA,
HGTTECH, I_POST, LILYBEIBEI, LO-2803,
LOONGHEAD, LOOSEBEADS,
MARCO_SHOP, NJO-121, ONESHOT77-7,
PRIESTLYY, SHANGHAI123456, SHOP-
VARIOUS, WHIS3PERSING5, WINEDYA622,
WONDERFULMALL, XIAOBAICAI-20 and
YAQFA-0,

                      Defendants.
-----------------------------------------------------------x

CASTEL, U.S.D.J.

        Plaintiff Allstar Marketing Group, LLC ("Allstar") moves for entry of default judgment against all remaining defendants in this action that have not been voluntarily dismissed: flowcarrym_2, hgttech, i_post, loonghead, loosebeads, and xiaobaicai-20 (the "Defaulting Defendants"). (ECF 42.) The motion will be granted.

BACKGROUND

        Allstar is a developer, producer, marketer, and distributor of consumer products that it promotes and sells in the United States and worldwide. (ECF 7 ¶ 7.) One of its most successful products is Baseboard Buddy, a multi-use cleaning duster (the "Baseboard Buddy Product"). (Id. ¶ 8.) Allstar is the exclusive licensee of U.S. Trademark Registration 4,016,645

1

for "BASEBOARD BUDDY" for "hand-held baseboard cleaning implements, namely, a manually-operated handled implement, namely, a cleaning pad formed with a baseboard cleaning head in Class 21" (the "Baseboard Buddy Mark").  (Id. at 2, ¶ 10.)  The Baseboard Buddy Mark is currently in use in commerce in connection with the Baseboard Buddy Product.  (Id. ¶ 11.)

Allstar alleges upon information and belief that the Defaulting Defendants are "individuals and/or businesses" who are located in China but conduct business in the United States and other countries by offering for sale or selling consumer products on eBay.  (Id. ¶¶ 6, 25-26.)  Allstar claims that the Defaulting Defendants manufacture, import, export, advertise, market, promote, distribute, display, offer for sale and/or sell "Counterfeit Products" to consumers in the United States, including in New York.  (Id. ¶ 31.)  Allstar defines Counterfeit Products as:

> Products bearing or used in connection with the Baseboard Buddy Mark and/or Baseboard Buddy Works, and/or products in packaging and/or containing labels and/or hang tags bearing the Baseboard Buddy Mark and/or Baseboard Buddy Works, and/or bearing or used in connection with marks and/or artwork that are confusingly or substantially similar to the Baseboard Buddy Mark and/or Baseboard Buddy Works and/or products that are identical or confusingly or substantially similar to the Baseboard Buddy Product.

(Id. at 3.)  The Counterfeit Products are nearly indistinguishable from Allstar's Baseboard Buddy Product, with only minor variations that no ordinary consumer would recognize.  (Id. ¶ 33.)

Allstar filed this action on October 29, 2020, asserting claims for trademark infringement, counterfeiting, false designation of origin, passing off and unfair competition, and copyright infringement under federal law, as well as unfair competition under New York State common law.  The Court entered a temporary restraining order on November 4, 2020, which authorized service by electronic means.  (ECF 4.)  On November 11, 2020, Allstar served all

defendants except whis3persing5, who was subsequently served on November 19.  (ECF 43, Ex. C; ECF 19; ECF 20.)

The Court held a preliminary injunction hearing on November 18, 2020.  (Minute Entry for Nov. 18, 2020.)  No defendant appeared.  (Id.)  The same day, the Court entered a preliminary injunction applicable to all defendants except whis3persing5, which had not yet been served.  (ECF 18.)  After Allstar served whis3persing5 and whis3persing5 failed to file a response or enter an appearance in this action, the Court modified the preliminary injunction order to apply to whis3persing5.  (ECF 24.)  Between December 2020 and April 2021, Allstar voluntarily dismissed several defendants, leaving only the Defaulting Defendants.

On April 7, 2023, the Court entered an Order to Show Cause directing Allstar to show cause why the action should not be dismissed for failure to prosecute.  (ECF 35.)  Allstar responded that it had been engaging in productive settlement discussions with the Defaulting Defendants, but that such discussions had "broken down" and none of the Defaulting Defendants had timely appeared "or indicated any intention of appearing."  (ECF 36.)  The Court granted Allstar leave to file a default motion by May 19, 2023.  (ECF 37.)

On May 16, 2023, Allstar filed a motion for entry of default judgment against the Defaulting Defendants.  (ECF 42.)  None of the Defaulting Defendants has responded to the motion or otherwise appeared in this action.  Allstar filed a proposed Certificate of Default against the Defaulting Defendants on May 16, 2023, and the Clerk entered it the same day.  (ECF 39; ECF 41.)

LEGAL STANDARD

Rule 55, Fed. R. Civ. P., sets forth a two-step process for obtaining a default judgment: the entry of a default and the entry of a default judgment. New York v. Green, 420 F.3d 99, 104 (2d Cir. 2005). The Clerk entered a Certificate of Default on May 16, 2023, (ECF 41), and Allstar now seeks a default judgment on its first and second causes of action, trademark counterfeiting and infringement in violation of the Lanham Act, 15 U.S.C. §§ 1114, 1116(d), and 1117(b)-(c).

On a motion for default judgment, the plaintiff's well-pleaded allegations as to liability are deemed to be admitted. Vera v. Banco Bilbao Vizcaya Argentaria, S.A., 946 F.3d 120, 135 (2d Cir. 2019) (quoting Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 108 (2d Cir. 1997)). The Court therefore deems the allegations of Allstar's plausibly alleged complaint to have been admitted by each of the Defaulting Defendants.

DISCUSSION

I.   Personal Jurisdiction

"To determine personal jurisdiction over a non-domiciliary in a case involving a federal question, the Court must engage in a two-step analysis." Chloe v. Queen Bee of Beverly Hills, LLC, 616 F.3d 158, 163 (2d Cir. 2010) (citing Best Van Lines, Inc. v. Walker, 490 F.3d 239, 243-44 (2d Cir. 2007)). First, the Court must apply the forum state's long-arm statute. Id. Second, "[i]f the long-arm statute permits personal jurisdiction, the second step is to analyze whether personal jurisdiction comports with the Due Process Clause of the United States Constitution." Id. at 164.

New York's long-arm statute, N.Y. C.P.L.R. § 302(a)(1), provides that "a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent . . . transacts any business within the state or contracts anywhere to supply goods or services in the state." To establish personal jurisdiction under section 302(a)(1), a plaintiff must meet two requirements: "(1) The defendant must have transacted business within the state; and (2) the claim asserted must arise from that business activity." Eades v. Kennedy, PC Law Offices, 799 F.3d 161, 168 (2d Cir. 2015) (quoting Licci ex rel. Licci v. Lebanese Canadian Bank, SAL, 732 F.3d 161, 168 (2d Cir. 2013)). "[A] defendant need not be physically present in New York to transact business there . . . as long as he engages in [p]urposeful activities or volitional acts through which he avails [him]self of the privilege of conducting activities within the . . . State, thus invoking the benefits and protections of its laws." Chloe, 616 F.3d at 169 (quotations omitted) (citations omitted) (alterations in original).

In cases involving a defendant that conducts business over the internet, such as on Amazon or eBay, "courts apply a 'sliding scale' test based on the level of a website's interactivity." EnviroCare Technologies, LLC v. Simanovsky, 11-Civ-3458, 2012 WL 2001443, at *3 (E.D.N.Y. June 4, 2012) (Seybert, J.); Best Van Lines, 490 F.3d at 252 ("We think that a website's interactivity may be useful for analyzing personal jurisdiction under section 302(a)(1), but only insofar as it helps to decide whether the defendant 'transacts any business' in New York—that is, whether the defendant, through the website, 'purposefully avail[ed] himself of the privilege of conducting activities within New York, thus invoking the benefits and protections of its laws.'" (citations omitted)). At one end of the scale, a "passive" website that "merely provides information that is accessed by individuals in New York is not grounds for the exercise of personal jurisdiction." EnviroCare Technologies, 2012 WL 2001443, at *3; Zippo

5

Manufacturing Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119, 1124 (W.D. Pa. 1997)).  By contrast, an "interactive" website "permits the exchange of information between users in another state and the defendant" and "depending on the level and nature of the exchange may be a basis for jurisdiction."  Citigroup Inc. v. City Holding Co., 97 F. Supp. 2d 549, 565 (S.D.N.Y. 2000).  "[C]ourts typically find that" an operator of an interactive website that "allows a buyer in New York to submit an order online . . . is 'transacting business' in New York and is therefore subject to the court's jurisdiction."  EnviroCare Technologies, 2012 WL 2001443, at *3.  In the case of a defendant who transacts business using eBay, "courts have instead focused on the extent to which the website 'is used as a means for establishing regular business with a remote forum.'"  Id. (quoting Boschetto v. Hansing, 539 F.3d 1011, 1019 (9th Cir. 2008)).  "[J]urisdiction is proper when a sophisticated seller operates a commercial business through eBay or Amazon."  Id. (collecting cases).

"If the long-arm statute permits personal jurisdiction, the second step is to analyze whether personal jurisdiction comports with the Due Process Clause of the United States Constitution.  This analysis has two related components: the 'minimum contacts' inquiry and the 'reasonableness' inquiry."  Chloe, 616 F.3d at 164 (citing International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).  With respect to minimum contacts, the court looks to the totality of the circumstances to "determine whether the defendant has sufficient contacts with the forum state to justify the court's exercise of personal jurisdiction."  Id.  "The crucial question is whether the defendant has 'purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws,' . . . "such that [the defendant] should reasonably anticipate being haled into court there."  Best Van

Lines, 490 F.3d at 242 (citations omitted) (alteration in original) (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474-75 (1985)).

As to reasonableness, the court must evaluate whether the exercise of personal jurisdiction comports with "'traditional notions of fair play and substantial justice'—that is, whether it is reasonable to exercise personal jurisdiction under the circumstances of the particular case." Chloe, 616 F.3d at 164 (quoting International Shoe, 326 U.S. at 316). "The Supreme Court has held that courts must evaluate the following factors as part of this 'reasonableness' analysis: (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies." Id. at 164-65 (citing Asahi Metal Indus. Co. v. Superior Court, 480 U.S. 102, 113-14 (1987)).

In Licci, the Second Circuit noted that "despite the fact that section 302(a)(1) of New York's long-arm statute and constitutional due process are not coextensive, and that personal jurisdiction permitted under the long-arm statute may theoretically be prohibited under due process analysis, we would expect such cases to be rare." 732 F.3d at 170 ("[W]e have been pointed to no such decisions in this Circuit."). As such, courts in this District have stated that, "[a]s a practical matter, the Due Process Clause permits the exercise of jurisdiction in a broader range of circumstances of N.Y. C.P.L.R. § 302, and a foreign defendant meeting the standards of § 302 will satisfy the due process standard." Energy Brands Inc. v. Spiritual Brands, Inc., 571 F. Supp. 2d 458, 469 (S.D.N.Y. 2008) (Chin, J.); see also Beskrone v. Berlin, 21-Civ-4803, 2023

7

WL 2023413, at *8 n.5 (S.D.N.Y. Feb. 13, 2023) (Engelmayer, J.); Aritomo v. Rhee, 21-Civ-4875, 2022 WL 17156554, at *7 (S.D.N.Y. Nov. 22, 2022) (Abrams, J.).

In this case, Allstar has alleged that the Defaulting Defendants are sophisticated sellers operating commercial businesses on eBay, that the Defaulting Defendants are "currently offering for sale and/or selling Counterfeit Products" via their eBay storefronts, that they each accept payment in U.S. Dollars and offer shipping to New York, and that they have transacted business with consumers located in New York for the sale and shipment of Counterfeit Products. (ECF 7 ¶¶ 3, 34-38, Ex. D.)  The Court therefore concludes that the Defaulting Defendants have purposefully availed themselves of the privileges of conducting business in the State of New York and that there is a direct relationship between these activities and Allstar's claims. Accordingly, personal jurisdiction pursuant to section 302(a)(1) is proper.  (See also ECF 4; ECF 18; ECF 20.)

The Court concludes that the exercise of personal jurisdiction over the Defaulting Defendants comports with due process for the same reasons that it satisfies New York's long-arm statute.  See Chloe, 616 F.3d at 171; Energy Brands Inc., 571 F. Supp. 2d at 469.  As stated above, by offering for sale and selling Counterfeit Products to consumers in New York, the Defaulting Defendants have purposefully availed themselves of the privileges of conducting business in New York.  Further, exercising jurisdiction here will not "offend traditional notions of fair play and substantial justice" and is thus reasonable.

II.  Liability

Allstar's well-pleaded allegations are sufficient to establish liability on its causes of action for trademark counterfeiting and infringement under the Lanham Act.  The Lanham Act holds liable any person who, without consent of the registrant of a mark:

> (a) use[s] in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or
>
> (b) reproduce[s], counterfeit[s], cop[ies], or colorably imitate[s] a registered mark and appl[ies] such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive.

15 U.S.C. § 1114.

To prevail on a trademark counterfeiting and infringement claim, a plaintiff must establish that (1) it has a valid mark entitled to protection, and (2) the "defendant's use of the mark is likely to cause consumers confusion as to the origin or sponsorship of the defendant's goods."  Virgin Enterprises Ltd. v. Nawab, 335 F.3d 141, 146 (2d Cir. 2003) (citing Gruner + Jahr USA Publishing v. Meredith Corp., 991 F.2d 1072, 1074 (2d Cir. 1993)).  "A certificate of registration with the [U.S. Patent and Trademark Office] is prima facie evidence that [a] mark is registered and valid (i.e., protectible), that the registrant owns the mark, and that the registrant has the exclusive right to use the mark in commerce."  Lane Capital Management, Inc. v. Lane Capital Management, Inc., 192 F.3d 337, 345 (2d Cir. 1999) (citing 15 U.S.C. § 1115(a)).  The "defendant bears the burden to rebut the presumption of mark's protectibility by a preponderance

9

of the evidence." Id. (citing PaperCutter, Inc. v. Fay's Drug Co., 900 F.2d 558, 563 (2d Cir. 1990)).

In determining whether a plaintiff has established that a defendant's use of a mark is likely to cause consumers confusion, courts consider the eight nonexclusive Polaroid factors: "(1) the strength of the plaintiff's mark, (2) the degree of similarity between the two marks, (3) the proximity of the parties' areas of commerce, (4) the likelihood that the plaintiff will bridge the gap separating their areas of activity, (5) actual consumer confusion, (6) whether the defendant acted in bad faith or was otherwise reprehensible in adopting the mark, (7) the quality of the defendant's product, and (8) the sophistication of the relevant consumer group." Mattel, Inc. v. www.fisher-price.online, 21-Civ-9608, 2022 WL 2801022, at *5 (S.D.N.Y. July 18, 2022) (Liman, J.) (citing Polaroid v. Polarad Electronics Corp, 287 F.2d 492, 495 (2d Cir. 1961)). "However, when a defendant sells counterfeit items, the Court 'need not undertake a factor-by-factor analysis under Polaroid because counterfeits, by their very nature, cause confusion.'" Mattel, 2022 WL 2801022, at *5 (quoting Gucci America, Inc. v. Duty Free Apparel, Ltd., 286 F. Supp. 2d 284, 287 (S.D.N.Y. 2003) (Marrero, J.)).

Allstar has plausibly alleged both elements. First, Allstar is the exclusive licensee of the federally registered Baseboard Buddy Mark, U.S. Trademark Registration 4,016,645. (ECF 7 ¶ 10, Ex. B.) The mark is thus presumptively valid and protectable, and as a consequence of their default, the Defaulting Defendants have not rebutted the presumption. Second, Allstar has annexed images of the Defaulting Defendants' eBay listings for Counterfeit Products, which are "nearly indistinguishable from" Allstar's Baseboard Buddy Product." (ECF 7 ¶¶ 31-33, 36-38; compare ECF 7, Ex. A, with id. Ex. D.) Thus, by their very nature, the Defaulting Defendants' products cause confusion. See Mattel, 2022 WL 2801022, at *5; see

also 15 U.S.C. § 1127 ("A 'counterfeit' is a spurious mark which is identical with, or substantially indistinguishable from, a registered mark.").

The motion for entry of default judgment is granted as to liability on Allstar's claims for trademark counterfeiting and trademark infringement (Counts I and II).[1]

III.     Permanent Injunction

Allstar seeks to permanently enjoin the Defaulting Defendants from any further counterfeiting and infringement of Allstar's Baseboard Buddy Mark. Under the Lanham Act, a court may grant injunctive relief "according to the principles of equity and upon such terms as the court may deem reasonable" to prevent further violations of a plaintiff's trademark. 15 U.S.C. § 1116. "A court may grant a permanent injunction on a motion for default judgment." Rovio Entertainment, Ltd. v. Allstar Vending, Inc., 97 F. Supp. 3d 536, 546 (S.D.N.Y. 2015) (Forrest, J.) (collecting cases).

A plaintiff seeking a permanent injunction must show actual success on the merits as well as "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006); Salinger v. Colting, 607 F.3d 68, 77-78 & n.7 (2d Cir. 2010) ("[W]e see no reason that eBay would not apply with equal force to an injunction in any type of case."); Coach, Inc. v. O'Brien, 10-Civ-6071, 2012 WL 1255276, at *17

---

[1] Allstar's motion does not seek default judgment on its remaining three causes of action, false designation of origin, passing off, and unfair competition (Count III), federal copyright infringement (Count IV), and unfair competition under New York common law (Count V).

(S.D.N.Y. Apr. 13, 2012) (Oetken, J.) ("In the Second Circuit, where a party seeks injunctive relief in an action alleging trademark infringement, courts apply the four-factor test enunciated by the Supreme Court in eBay . . . .").

As explained above, Allstar has established success on the merits of its trademark counterfeiting and infringement claims. As such, it is entitled to a "rebuttable presumption of irreparable harm." 15 U.S.C. § 1116(a) ("A plaintiff seeking [a permanent] injunction shall be entitled to a rebuttable presumption of irreparable harm upon a finding of a violation identified in this subsection. . . ."); Kelly Toys Holdings, LLC v. alialialiLL Store, 606 F. Supp. 3d 32, 52 & n.5 (S.D.N.Y. 2022) (Hellerstein, J.) ("Codification of a rebuttable presumption of irreparable harm was signed into law on December 27, 2020, as part of the Trademark Modernization Act of 2020 . . . ."). The Defaulting Defendants, by virtue of their default, have not rebutted the presumption. Allstar's allegations that the Defaulting Defendants are offering for sale and/or selling Counterfeit Products "nearly indistinguishable from" and "confusingly and/or substantially similar to" the Baseboard Buddy Product in order to confuse consumers into believing the Counterfeit Products are the Baseboard Buddy Product and to trade on Allstar's "incalculable goodwill" further support the conclusion that Allstar has been irreparably harmed. (ECF 7 ¶¶ 33-42); see, e.g., Genesee Brewing Co., Inc. v. Stroh Brewing Co., 124 F.3d 137, 142 (2d Cir. 1997) ("In the context of trademark . . . injunctions, . . . a showing of likelihood of confusion . . . establishes irreparable harm."); Really Good Stuff, LLC v. BAP Investors, L.C., 813 F. App'x 39, 44 (2d Cir. 2020) (summary order) ("The loss of reputation and goodwill constitutes irreparable harm."); Kelly Toys Holdings, 606 F. Supp. 3d at 52 (citing cases).

Furthermore, the remedies available at law are inadequate to compensate for the harm to Allstar's goodwill and reputation, particularly because "[a] defaulting defendant may be

presumed to be willing to continue their infringement of a mark." See 3M Co. v. Performance Supply, LLC, 20-Civ-2949, 2023 WL 3481608, at *6 (S.D.N.Y. Apr. 26, 2023), report and recommendation adopted, 120-Civ-02949, 2023 WL 3480927 (S.D.N.Y. May 16, 2023) (Rochon, J.); Kelly Toys Holdings, 606 F. Supp. 3d at 52-53.  Although eBay has frozen the Defaulting Defendants' accounts and storefronts in compliance with the Court's preliminary injunction order, "if such restraints are lifted, there remains a serious possibility that [the Defaulting Defendants will continue to infringe [Allstar's] intellectual property rights." Kelly Toys Holdings, 606 F. Supp. 3d at 53; (ECF 19; ECF 20; ECF 44 at 18).  Additionally, because the Defaulting Defaults failed to appear in this action, Allstar "was unable to obtain complete and accurate information regarding the actual profits derived from [the Defaulting Defendants'] sales of counterfeit products." See Mattel, 2022 WL 2801022, at *11.

The balance of hardships favors Allstar, which has suffered and will continue to suffer irreparable harm to its goodwill and reputation as a result of the Defaulting Defendants' sale of Counterfeit Products.  And finally, the public interest would not be disserved by entry of a permanent injunction because "the public has an interest in not being deceived – in being assured that the mark it associates with a product is not attached to goods of unknown origin and quality." New York City Triathlon, LLC v. NYC Triathlon Club, Inc., 704 F. Supp. 2d 305, 344 (S.D.N.Y. 2010) (McMahon, J.).  Accordingly, Allstar's request for a permanent injunction will be granted.

IV.     Statutory Damages

Allstar also seeks statutory damages in the amount of $50,000.00 against each of the six Defaulting Defendants, for a total of $300,000.00.  The Lanham Act permits a plaintiff in a case involving the use of a counterfeit mark to seek statutory damages instead of actual

damages and profits. 15 U.S.C. § 1117(c). Section 1117(c) provides for an award of "not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c)(1). Where willfulness is demonstrated, the court may award a maximum of $2,000,000 per counterfeit mark per type of goods or services sold. Id. § 1117(c)(2). Here, the Court has discretion to award between $1,000 and $2,000,000 per counterfeit mark per type of goods sold because the Defaulting Defendants' infringement is deemed willful by virtue of the default. See Tiffany (NJ) Inc. v. Luban, 282 F. Supp. 2d 123, 124 (S.D.N.Y. 2003) (Marrero, J.).

Section 1117(c) "does not provide guidelines for courts to use in determining an appropriate award," except that the court should award an amount it "considers just." Id. at 124-25 (quoting Louis Vuitton Malletier v. Veit, 211 F. Supp. 2d 567, 583 (E.D. Pa. 2002), and 15 U.S.C. § 1117(c)). For guidance, courts have looked to "the caselaw of an analogous provision of the Copyright Act, 17 U.S.C. § 504(c), which also provides statutory damages for willful infringement." Id. (citing Louis Vuitton, 211 F. Supp. 2d at 583, and Sara Lee Corp. v. Bags of N.Y., Inc., 36 F. Supp. 2d 161, 166 (S.D.N.Y. 1999) (Motley, J.)). Borrowing from those cases, courts consider the following factors in determining the "just" amount of statutory damages for use of a counterfeit mark: "(1) the expenses saved and the profits reaped; (2) the revenues lost by the plaintiff; (3) the value of the copyright or, by analogy, trademark; (4) the deterrent effect on others besides the defendant; (5) whether the defendant's conduct was innocent or willful; (6) whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced; and (7) the potential for discouraging the defendant." Smart Study Co. v. lizhiwangluo16, 2020 WL 3639659, at *6 (S.D.N.Y. July 6, 2020) (Koeltl, J.) (quoting Coach, 2012 WL 1255276, at *13); see also Tiffany (NJ) Inc., 282 F. Supp. 2d at 125

14

(citing Fitzgerald Publishing Co., Inc. v. Baylor Publishing Co., 807 F.2d 1110, 1117 (2d Cir. 1986)).

In light of the above factors, the Court concludes that statutory damages in the amount of $50,000 for each of the Defaulting Defendants is appropriate. With respect to the first, second, and sixth factors, the Defaulting Defendants' failure to appear in this action has deprived Allstar of the ability to obtain discovery from them and has made it impossible to assess Allstar's loss and the extent of the Defaulting Defendants' profits gained and expenses saved. See, e.g., Kelly Toys Holdings, 606 F. Supp. 3d at 54-55; Smart Study, 2020 WL 3639659, at *6 ("The defendants' failure to appear . . . weighs in favor of a heightened award of statutory damages under the sixth factor."); Moonbug Entertainment Ltd. v. A20688, 21-Civ-4313, 2022 WL 1239586, at *3 (S.D.N.Y. Apr. 26, 2022) (Marrero, J.). Moreover, as courts in this District and beyond have found, the sale of counterfeit items over the internet suggests a "broad scope of operations," Smart Study Co., 2020 WL 3639659, at *6, and "access to a virtually limitless number of customers," Tiffany (NJ) Inc., 282 F. Supp. 2d at 125 (quotations omitted) (quoting Rolex Watch U.S.A., Inc. v. Jones, 99-Civ-2359, 2002 WL 596354, at *5 (S.D.N.Y. Apr. 17, 2002) (Maas, Mag. J.), and citing Louis Vuitton, 211 F. Supp. 2d at 584 ("While the record contains no evidence of the actual scope of the defendants' sales, nor the number of hits the internet site received, given the scope of the internet supermarket, such sale offerings are presumptively quite high . . . .")); see also Coach, Inc. v. Ocean Point Gifts, 09-Civ-4215, 2010 WL 2521444, at *6 (D.N.J. June 14, 2010) ("The typical Internet case involves a suit against someone selling counterfeit luxury items on the Internet. These cases often have high damage awards due in part to the wide market exposure that the Internet can provide.").

15

The third factor also favors the requested damages award because Allstar has credibly alleged that the Baseboard Buddy Product is valuable and widely recognized by consumers. (ECF 7 ¶¶ 8-9, 14-19.)  The fourth, fifth, and seventh factors pertain to the willfulness the Defaulting Defendants' conduct and the deterrent effect of damages on the Defaulting Defendants and others.  The Court has already determined that the Defaulting Defendants' infringement was willful by virtue of their default.  And "given the apparent extent of counterfeit activity" here, there is a need to discourage the Defaulting Defendants from future infringement and to deter others.  See Kelly Toys Holdings, 606 F. Supp. 3d at 55 (quoting Bumble and Bumble, LLC v. Pro's Choice Beauty Care, Inc., 14-Civ-6911, 2016 WL 658310, at *5 (S.D.N.Y. Feb. 17, 2016), report and recommendation adopted, 2016 WL 1717215 (S.D.N.Y. Apr. 27, 2016) (Caproni, J.)); (see also ECF 7 ¶¶ 25-26, 28).

Accordingly, the Court will award statutory damages of $50,000 per Defaulting Defendant, an amount within the range of awards to similarly situated plaintiffs in recent cases and far below the maximum award of $2,000,000 that could be assessed against each of them. See, e.g., All-Star Marketing Group, LLC v. Media Brands Co., 775 F. Supp. 2d 613, 616-17, 624 (S.D.N.Y. 2011) (Berman, J.) ($25,000 or $50,000 per mark); Off-White LLC v. 2017pingan, et al., 20-Civ-5191 (KPF), ECF 42 at 7 (S.D.N.Y. May 7, 2021) (Failla, J.) ($50,000 per defendant); Moonbug Entertainment, 2022 WL 1239586, at *3 ($50,000 per defendant). Allstar is also entitled to post-judgment interest pursuant to 28 U.S.C. § 1961.

V.      Restraining Notices

Finally, Allstar's request for leave to serve restraining notices pursuant to N.Y. C.P.L.R. § 5222 will be granted.  Pursuant to Rule 69(a), Fed. R. Civ. P., "postjudgment efforts

to execute on a money judgment [must] comply with the procedural law of the forum state – unless a federal statute dictates to the contrary. The Lanham Act contains no such instruction. Accordingly, the applicable statute is [the New York C.P.L.R.]." Kelly Toys Holdings, 606 F. Supp. 3d at 57 (alterations in original) (quoting Tiffany (NJ) LLC v. Dong, 11-Civ-2183, 2013 WL 4046380, at *10 (S.D.N.Y. Aug. 9, 2013) (Maas, Mag. J.)); see also Rule 69(a). N.Y. C.P.L.R. § 5222, provides that "once a money judgment is rendered against a defendant, a federal district court in New York has the power to, among other things, restrain the defendant's assets until the judgment is satisfied." Kelly Toys Holdings, 606 F. Supp. 3d at 57; N.Y. C.P.L.R. § 5222; see also Interpool Ltd. v. Patterson, 89-Civ-8501, 1995 WL 105284, at *1 (S.D.N.Y. Mar. 13, 1995) (Kaplan, J.) ("A New York judgment creditor is entitled to a restraining notice on the debtor as a matter of right."); Wagner v. Chiari & Ilecki, LLP, 973 F.3d 154, 157 (2d Cir. 2020). "A restraining notice may be served on both the judgment debtor and third parties who hold asserts of the judgment debtor." Kelly Toys Holdings, 606 F. Supp. 3d at 57; N.Y. C.P.L.R. §§ 5222(a).

    Courts in this District have instructed that a plaintiff concerned that a defaulting defendant will dispose of, transfer, or hide assets "should turn to the remedies ordinarily applicable to enforcement of judgments at law under Rule 69 and N.Y. C.P.L.R. § 5222." WowWee Group Ltd. v. Meirly, 18-Civ-706, 2019 WL 1375470, at *11 (S.D.N.Y. Mar. 27, 2019) (Nathan, J.); Allstar Marketing Group, LLC v. 158, 19-Civ-4101, 2019 WL 3936879, at *4 (S.D.N.Y. Aug. 20, 2019) (Woods, J.) (citing WowWee, 2019 WL 1375470, at *11). In Off-White LLC v. 2017pingan, et al., 20-Civ-5191 (KPF), ECF 40 at 5 (S.D.N.Y. May 7, 2021) (Failla, J.), and two related actions,[2] Judge Failla permitted the plaintiff to serve restraining

---

[2] Off-White LLC v. 24 Hours Delivery Store et al., 20-Civ-5194 (KPF); Off-White LLC v. A9660, et al., 20-Civ-5196 (KPF).

17

notices on PayPal pursuant to C.P.L.R. § 5222 to prevent PayPal from transferring the defaulting defendants' assets that had been frozen pursuant to a preliminary injunction order.  See also Mattel, Inc. v. Agogo Store, 21-Civ-1507, 2022 WL 525698 (S.D.N.Y. Jan. 31, 2022), report and recommendation adopted, 21-Civ-1507, 2022 WL 524057, at *1 (S.D.N.Y. Feb. 22, 2022) (Nathan, J.) (ordering that an asset restraining notice pursuant to C.P.L.R. § 5222 be served).

The Court will permit Allstar to serve restraining notices on the Defaulting Defendants and "Third Party Service Providers and Financial Institutions," as those terms are defined in its motion.  (ECF 44 at 9, 29.)  Additionally, the automatic 30-day stay on enforcement of money judgments pursuant to Rule 62(a), Fed. R. Civ. P is dissolved.  See, e.g., Kelly Toys Holdings, 606 F. Supp. 3d at 57; Moonbug Entertainment, 2022 WL 1239586, at *5; Mattel, 2022 WL 525698, at *10, report and recommendation adopted, 2022 WL 524057, at *1; Allstar Marketing Group, 2019 WL 3936879, at *4 n.6 ("[I]f a plaintiff is concerned that defendants might attempt to conceal assets during the pendency of the automatic stay, it should include a dissolution of that stay as part of the relief requested in its proposed judgment.").

Allstar has stated that if its request for permission to send restraining notices is granted, it will promptly serve such notices on the Defaulting Defendants, Third Party Service Providers, and Financial Institutions, "and upon restraint, would move for an asset turnover pursuant to CPLR § 5225."  The Court will therefore address asset turnover procedures at the appropriate time.  See Kelly Toys Holdings, 606 F. Supp. 3d at 57 ("The Court does not presently address procedures for effecting turnover of assets, which Plaintiff has indicated will proceed at a time after restraining notices are served."); Off-White LLC v., 20-Civ-5191 (KPF), ECF 40 at 5 ("The Court reserves decision on Plaintiff's request for an asset turnover order pursuant to CPLR § 5224 until after the notice procedure under CPLR § 5222 is completed and

Plaintiff files a motion for a writ of execution under Federal Rule of Civil Procedure Rule 69 and properly serves said motion on PayPal.").

CONCLUSION

The Court concludes that Allstar is entitled to a Final Default Judgment against the Defaulting Defendants on its claims for trademark counterfeiting and infringement. Allstar's request for a permanent injunction enjoining the Defaulting Defendants from future infringement of the Baseboard Buddy Mark is granted, and Allstar is awarded statutory damages in the amount of $50,000 per Defaulting Defendant ($300,000 total). Allstar is permitted to serve restraining notices on the Defaulting Defendants, Third Party Service Providers, and Financial Institutions pursuant to N.Y. C.P.L.R § 5222, and the automatic stay on enforcement of money judgments pursuant to Rule 62(a) is dissolved.

The Court will separately enter a Final Default Judgment and Preliminary Injunction Order. The Clerk is directed to terminate the motion. (ECF 42.)

SO ORDERED.

_P. Kevin Castel_
P. Kevin Castel
United States District Judge

Dated: New York, New York
       August 14, 2023